**Dated: August 16, 2018**
**The following is SO ORDERED:**

_____
**David S. Kennedy**
**UNITED STATES CHIEF BANKRUPTCY JUDGE**

_____

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

---

| | |
|---|---|
| **In re** | |
| **No Place Like Home, Inc.,** | **Case No. 15-31133-K** |
| **Debtor.** | **Chapter 11** |
| **Tax ID: 62-1800046** | |

---

**MEMORANDUM AND ORDER RE UNITED STATES TRUSTEE'S MOTION TO ALTER, AMEND OR VACATE ORDER ADMINISTRATIVELY CLOSING ESTATE COMBINED WITH NOTICE OF THE ENTRY THEREOF**

---

**INTRODUCTION**

This core proceeding arises out of a dispute between the above-named Chapter 11 Debtor, No Place Like Home, Inc. ("Debtor"), and the United States Trustee for Region 8 ("U.S. Trustee") over an order entered on April 30, 2018 administratively closing Debtor's Chapter 11

1

case *nunc pro tunc* as of December 31, 2017. The U.S. Trustee believes that the *nunc pro tunc* provision was inappropriate under the circumstances and that the case should have been administratively closed as the entry of the order on April 30, 2018. For the reasons stated below, the Court agrees with the U.S. Trustee and the Order will be amended to reflect that the case was administratively closed as of April 30, 2018.

## JURISDICTION

All parties agree that this Court has jurisdiction under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

## FACTS

Unless noted otherwise, the background facts in this proceeding are undisputed.

On December 7, 2017, Debtor moved to "administratively close" the case without entry of a final decree. (Dkt. no. 389.) Debtor's intention was to administratively close the case to avoid having to pay quarterly fees under 28 U.S.C. § 1930(a)(6) to the U.S. Trustee. This would save Debtor tens of thousands of dollars for each quarter going forward. The U.S. Trustee did not object to the case being administratively closed.

On December 19, 2017, Debtor's motion to administratively close the case was orally granted. However, the written order to administratively close the case was not entered until April 30, 2018. (Dkt. no. 406.) That order contained language closing the case *nunc pro tunc* as of December 31, 2017. The U.S. Trustee states that he was notified of the *nunc pro tunc* provision in the order prior to entry.

On May 14, 2018, the U.S. Trustee filed a motion pursuant to Fed. R. Bankr. P. 9023 to alter, amend or vacate the order administratively closing estate. (Dkt. no. 408.) The U.S. Trustee

2

does not believe the *nunc pro tunc* provision is appropriate. He believes that he is entitled to quarterly fees for the period January 1, 2018 through April 30, 2018.

Prior to the confirmation of Debtor's Second Amended Plan, Debtor objected to the claims of 22 former employees. (Dkt. no. 120.) The basis of these claims is irrelevant here, but it is important to note that the status of the claims was still undecided when the motion to administratively close the case was granted. The 22 former employees objected to the case being administratively closed. (Dkt. no. 390.) The Court overruled that objection and granted the motion to administratively close the case.

On January 5, 2018, Debtor filed motions *in limine* to exclude hearsay concerning overtime payments, and to exclude unrelated lawsuits, and unrelated investigations. (Dkt. no. 398-99.) On April 27, 2018, three days before the order closing the case *nunc pro tunc* was entered, Debtor and the 22 former employees filed a joint motion to approve compromise under Fed. R. Bankr. P. 9019. (Dkt. no. 403.)

## DISCUSSION

As stated above, on April 30, 2018, the Court entered an order which provided that Debtor's Chapter 11 case was administratively closed *nunc pro tunc* as of December 31, 2017. The U.S. Trustee filed a timely motion to alter or amend that order. Federal Rule of Civil Procedure 60(b), made applicable to this proceeding by Federal Rule of Bankruptcy procedure 9024, provides that upon "motion and just terms, the court may relieve a party . . . from a . . . order" and then provides 6 acceptable reasons for doing so. Of those reasons, only F.R.C.P. 60(b)(1) and (6) could apply hear.

Federal Rule of Civil Procedure 60(b)(1) allows the Court to alter or amend an order due to surprise. The U.S. Trustee contends that he was surprised that the order contained language

administratively closing the case *nunc pro tunc* as of December 31, 2018. Debtor argues that the U.S. Trustee attended the hearing on the motion to administratively close the case and was aware of why Debtor had filed it. That the U.S. Trustee was aware of the motion and the rationale of the Debtor is not in dispute. The "surprise" in this instance is the provision administratively closing the case *nunc pro tunc*. To demonstrate the problem with the *nunc pro tunc* provision, it may be helpful to consider what typically happens when this Court grants a motion.

This Court generally takes the position that no oral decision has any authority until a written order has been filed. Ordinarily, when a motion is granted, the order is entered within a few days of the Court's ruling. *See* TNWB LBR 9074-1(c). Due to the gap between the Court's oral ruling and the filing of the written order, there is technically a period of time where whatever relief was granted has not actually been given effect. It is important to note that even though the motion was granted orally at an earlier date, it is rare for this Court to enter an order with a *nunc pro tunc* provision. In the vast majority of cases, this period is short and a *nunc pro tunc* provision is unnecessary.

In this case, it was several months before the order was entered. The U.S. Trustee's position is that he expected an order would be entered administratively closing the case as of the date the order was entered and that he did not oppose such an order. This would be in line with the Court's normal practices. The "surprise" occurred when the order contained the *nunc pro tunc* provision. Debtor counters that the U.S. Trustee was provided a copy of the order before it was entered. However, the Court is not sure the courtesy copy provided to the U.S. Trustee eliminates the "surprise." While the U.S. Trustee was made aware of the *nunc pro tunc* provision prior to entry of the order, there is no formal procedural vehicle for the U.S. Trustee to object to the proposed order. The Court had already granted the motion and was awaiting the

4

order.  Could the U.S. Trustee file an objection to the order prior to it being entered?  Or is a motion to alter or amend (such as was filed) the appropriate mechanism to remove the offending provision?  The Court believes it is the latter, but will not totally rely on that conclusion because the Court believes that F.R.C.P. 60(b)(6) offers a better basis for deciding this matter.

Federal Rule of Civil Procedure 60(b)(6) allows the Court to alter or amend an order for "any other reason that justifies relief."  Under 28 U.S.C. § 1930(a)(6), the U.S. Trustee is entitled to quarterly fees for "each quarter (including any fraction thereof)" while the case is open.  The amount of these fees are based on how much a debtor disburses during the appicable quarter.  Nowhere in the Bankruptcy Code or Title 28 are these fees predicated on the U.S. Trustee "earning the fee."  No matter how unfair this may seem to a debtor (or its creditors) which may be forced to pay tens of thousands of dollars each quarter, 28 U.S.C. § 1930(a)(6) is the price that Congress has decided a Chapter 11 debtor must pay to utilize the protections that Chapter 11 provides.  Quantum meruit plays no role here.

Debtor did, in fact, make use of the Chapter 11 case after the case would have been administratively closed according the *nunc pro tunc* provision.  The reason Debtor failed to enter the order until April of 2018 was because there was concern that this Court would lose jurisdiction over the pending legal dispute between Debtor and its 22 former employees.  That dispute was wrapping up when Debtor's motion to administratively close the case was granted in December 2017, but a settlement had not been officially reached.  At the hearing on this matter, counsel for Debtor stated that there was a problem with getting all of the 22 former employees to sign off on the settlement and this delayed the entry of the order administratively closing the case.  Put another way, the order was delayed so that the case would stay open and this Court could retain jurisdiction, meaning Debtor was benefitting from the advantages of being in

5

Chapter 11.  To make use of such advantages, Debtor must pay the statutorily required quarterly fees as outlined in 28 U.S.C. § 1930(a)(6).

This conclusion is bolstered by the fact that Debtor filed motions *in limine* on January 5, 2018.  If the case was closed as of December 31, 2017, there would have been no reason for such motions as, with the exception of a motion to reopen, motions in closed cases are meaningless.  Similarly, with the *nunc pro tunc* provision in place, the joint motion to approve compromise under Fed. R. Bankr. P. 9019 (dkt. no. 403) filed by Debtor and the 22 former employees has no legal bearing because the case was closed almost four months before the motion was filed.  Debtor's actions indicate that it believed the case was still open as of April 2017.

The Court would like to note that it does NOT believe Debtor had any sort of nefarious intent.  Economically, it made sense for Debtor to seek to administratively close the case to avoid the quarterly fees and the U.S. Trustee had no objection to the motion to do so.  The Court believes that Debtor had a responsible expectation that the dispute with the 22 former employees would be resolved quickly enough that the case could be administratively closed before (or at least close to) the New Year.  However, there was a delay in the resolution of those disputes and Debtor felt the case needed to remain open until those disputes were resolved.  Therefore, it is inappropriate for the case to be have been administratively closed in December 2017.  Because Debtor was making use of the Chapter 11 process, it must also pay the statutorily required quarterly fees to the U.S. Trustee.

## CONCLUSION

Considering a totality of the facts and circumstances and the applicable law, the U.S. Trustee has satisfied the requirements of Federal Rule of Civil Procedure 60(b)(6), which allows the Court to alter or amend an order for "any other reason that justifies relief."

Accordingly, IT IS ORDERED AND NOTICE IS HEREBY GIVEN that:

1) The order to administratively close the case, which was entered on April 30, 2018 (dkt. no. 406), is hereby amended to administratively close the case as of April 30, 2018.

> E. Franklin Childress, Jr., Esq.
> *Attorney for the Debtor*
> Baker Donelson Bearman Caldwell & Berkowitz, PC
> 165 Madison Ave., Suite 2000
> Memphis, TN 38103
>
> M. Ruthie Hagan, Esq.
> *Attorney for the Debtor*
> Baker Donelson Bearman Caldwell & Berkowitz, PC
> 165 Madison Ave., Suite 2000
> Memphis, TN 38103
>
> Rebekah Bailey, Esq.
> *Attorney for Claimants*
> Nichols Kaster, PLLP
> 4600 IDS Center, 80 South 8th St.
> Minneapolis, MN 55402
>
> William B. Ryan, Esq.
> *Attorney for Claimants*
> Donati Law, PLLC
> 1545 Union Ave.
> Memphis, TN 38104
>
> David J. Cocke, Esq.
> *Attorney for Claimants*
> Evans Petree, PC
> 1000 Ridgeway Loop Rd., Suite 200
> Memphis, TN 38120
>
> US Trustee for Region 8
> One Memphis Place
> 200 Jefferson Ave., Suite 400
> Memphis, TN 38103